AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Oregon

FILED 01 DEC '15 11:39 USDC-ORP

**UNDER SEAL**

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| EOIN LING CHURN YENG and | ) | '15-MJ-173  1-2 |
| GALVIN YEO SIANG ANN, | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __May 2008 through July 2015__ in the county of __Clackamas & Washington__ in the _____ District of __Oregon__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 371, 545 | Conspiracy to Smuggle Wildlife into the United States Contrary to Law |

This criminal complaint is based on these facts:

See attached affidavit of Special Agent Paul Montuori.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Paul Montuori--USFWS
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Dec. 1, 2015

_____
*Judge's signature*

City and state: Portland, Oregon

Hon. Stacie F. Beckerman, U.S. Mag. Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF COMPLAINT AND ARREST WARRANT

I, Paul Montuori, being duly sworn and deposed, state:

### AFFIANT'S TRAINING AND EXPERIENCE

1. I am a Special Agent (SA) with the US Fish and Wildlife Service (USFWS), Department of the Interior, and have been so employed since 2008. I am currently assigned to the Wilsonville, Oregon field Office. Prior to working as a SA with USFWS, I was employed as a SA with the US Department of State for nine years. During my employment with the USFWS, I have conducted and participated in investigations of violations of wildlife laws and have undergone training in the identification and investigation of wildlife crimes. During my career as a law enforcement officer, I have been involved in the execution of numerous arrest warrants, including arrest warrants for wildlife smuggling.

### PROBABLE CAUSE

2. This affidavit is submitted in support of a complaint and arrest warrants for EOIN LING CHURN YENG ("LING") and GALVIN YEO SIANG ANN ("YEO") and sets forth probable cause establishing LING and YEO have committed violations of 18 U.S.C. § 371, Conspiracy to Smuggle Wildlife and 18 U.S.C. § 545, Smuggling Wildlife Contrary to Law.

3. Information contained in this affidavit is based upon information I have gained from my investigation, my personal observations, my training and experience, investigation by other agents, and interviews of witnesses. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for arrest warrants, it does not set forth each and every fact that I have learned during the course of this investigation.

## STATUTES

4. 18 U.S.C. § 371 – If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

5. 18 U.S.C. § 545 - It is unlawful to fraudulently or knowingly import or bring into the United States any merchandise contrary to law, or to receive, conceal, buy, sell, or in a manner facilitate the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law.

    a. The Endangered Species Act of 1973 ("ESA"), 16 U.S.C. § 1538(a) - It is unlawful for any person to: import, export, deliver, receive, carry, transport, ship (interstate or foreign commerce), sell or offer for sale (in interstate or foreign commerce) the listed species.

    b. The Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"), 16 U.S.C. § 1538(c)(1) - It is unlawful for any person subject to the jurisdiction of the United States to engage in any trade in any specimens contrary to the provisions of the Convention. CITES is an international treaty that regulates trade in wildlife and plants and contains three appendices. Appendix I lists species that are the most endangered among CITES listed animals and plants and prohibits international trade with the exception of non-commercial purposes, such as scientific research. Appendix II lists species that may become endangered unless trade is closely controlled. Appendix III lists species at the request of a country that already regulates trade in the species and needs the cooperation of other countries to prevent unsustainable or illegal exploitation.

A CITES permit must be obtained to import any species listed in a CITES appendix. All of the species included in this affidavit are protected under CITES Appendices I and II.

## THE INVESTIGATION

6. LING and YEO are co-owners of an online business named BORNEO ARTIFACT and regularly smuggled endangered wildlife from the Malaysian island of Borneo to the United States from 2005 to 2015. LING and YEO offered and sold skulls and parts through their website, email messages, and online auctions. They accepted payments via international wire transfer. LING and YEO smuggled the wildlife to the United States via mail parcels and declared the items as "crafts."

7. The investigation began in 2013 when a routine search of an international package from a business in Indonesia revealed a Helmeted Hornbill mandible destined for a residence in Oregon. Helmeted hornbills are listed as endangered under ESA and listed on CITES Appendix I.

8. I covertly contacted the confidential source ("CS") who lived at the Oregon residence.[1] On July 1, 2014, USFWS SA Jimmy Barna purchased from the CS two Orangutan skulls (protected by ESA and CITES Appendix I) and one turtle shell (at least CITES II) that the CS, LING, and YEO smuggled into the United States. Shortly after the purchase, USFWS agents executed a search warrant at the CS's residence in Oregon. During an interview done in conjunction with the execution of the search warrant, the CS told me about BORNEO ARTIFACT and the following past shipments he received from YEO and LING:

---

[1] Throughout most of this investigation, the individual referred to in this affidavit as the CS has been a target of the investigation. As of June 8, 2015, this individual became a confidential source ("CS") and, therefore, is referred to in the affidavit as a "CS."

a. On or about May 18, 2008, YEO and LING sold a turtle shell (at least CITES II) to the CS and shipped it to the District of Oregon.

b. On or about October 14, 2008, YEO and LING sold an Orangutan skull to the CS and shipped it to the District of Oregon.

c. On or about November 17, 2008, YEO and LING sold a Langur skull (at least CITES II) to the CS and shipped it to the District of Oregon.

d. On or about March 27, 2011, YEO and LING sold an Orangutan skull and a Macaque skull to the CS and shipped them to the District of Oregon.

e. On or about May 11, 2011, LING and YEO sold a primate skull (at least CITES II) to the CS and attempted to ship it to the District of Oregon, but it was seized by USFWS in Torrance, CA. The following are email statements by the CS, YEO, and LING after the seizure:

CS: Some distressing news today. I received an envelope in the mail that informed me that the Macaque Skull you sent has been seized and is subject to forfeiture. Their claim has to do with acquisition of endangered species and – if the US Fish and Wildlife Services decides to – they can turn it over to a Federal court and the Attorney General's Office. That is not good news for me since I am the rightful owner. So, my first question is: "Have you had this happen before with one of your US clients?" "And, what did you do to help"? If it has not happened before, will you help me? I can ABANDON the skull but I am not sure what legal action the US Govt will take against me. OR, I can petition for remission and stop the forfeiture. The best way to proceed – even though I have no idea what I am doing – is to justify the skull acquisition based on the fact that I collect these types of cultural artifacts. That would be where I would need your help. They (US Dept of Interior) have only given me a few days to respond. Please help me as soon as possible.

YEO: i am sad to hear this but very important: never admit that you have interest in this thing and buy it, because it is an offence for buying this item! easiest way is to say you have no idea who sent that to you and you totally have no intention of owning it, buying it or interested in it. u can say that it could be some friends that you made during your vacations and they send this to you as friendship and gifts but you have no idea who that person is

|       |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                              |
|-------|----|

because you have visited many places and made many friends from there. if you admit that you have interest more investigation will come..so please avoid this..after all, anyone can send you anything! some can send to a wrong address as well and you happen to be the receiver. please let me know if there is anything i can help..also the parcel was sent without any sender's address, so no one will know who is sending if you never admit that you are the buyer.. dont admit that you want this item. also this is normally confiscated and abondoned only and nothing will happen, if u dont admit that you are the buyer i can assure you that this will easily abondoned and nothing will happen, if you dont admit that you are buying..if you have any question please get back to me first before you give any details to custom, i can help u further

CS: I called the Wildlife Inspector (assigned to this case) in California this morning. I told him I didn't know anything about the item (which I hated to do because it is not the truth). He said to check the box that says "another entity holds an interest in this property", make the same comments, sign the bottom and send it in. That's what I did. I asked him who sent me this package and he said he didn't know but likely someone in Thailand. I don't know what happens next…. probably nothing. I would think that this incident would not warrant them turning this over the US attorney generals office. I just don't expect that to happen. I have attached the form for your reference.

YEO: dont worry, please dont call the custom anymore, it should not be any problem, because this is just a small problem for them, they have many important one to deal with, dont need to trigger them anymore, so far, 1 out of 10 skulls have problem, but all the skull they will seize without doing anything. this is a very slight offence for them and they have got many more important one to deal with.

LING: I am sorry to hear about the skull episode. There is not a chance these officers would know what age and ritual/cultural values/artifacts/heritage of these objects(skull). The skull sent to u is old, not a recently obtained skull and carved as a gift, no no buddy. Customs as random as what Galvin tried to explain do sometimes get nosy and dig a little deeper to see what objects goes into their country, in this case it's a skull and it does alarm those who only sees it as a slaughtered animal rather than an artifact trophy. I would be more than happy to do a reasonable discount for your next purchase, let me know and I will discuss with Galvin on the best possible way for all of us yea?

  f. On or about October 10, 2012, LING and YEO sold a Macaque skull (at least CITES II) with bear claws (at least CITES II) to the CS and shipped it to the District of Oregon.

9. I analyzed PayPal records from 2008 to 2014 and found that the CS sent LING and YEO approximately $14,000 via PayPal (sixteen separate monetary transactions). The CS corroborated these records during the interview. LING and YEO shipped the CS in the District of Oregon approximately twelve wildlife items, including the wildlife mentioned in paragraph 8. USFWS records did not reflect the presentation of any CITES permits for these wildlife items.

10. I analyzed email records and documented that, from 2008 to 2014, LING sent hundreds of wildlife photos to the CS via email, offering to sell and ship the items in the photos. The following is a summary of the ESA/CITES-protected wildlife offered:

- Sixteen Orangutan skulls (ESA/CITES I)
- Thirteen unspecified bear skulls (at least CITES II)
- Two hundred and ten unspecified bear claws (at least CITES II)
- Twenty nine unspecified bear teeth (at least CITES II)
- Eighteen unspecified primate skulls (at least CITES II)
- Twenty unspecified whale bone hairpins (at least CITES II)
- Two unspecified whale bone statues (at least CITES II)
- Two Dugong (marine mammal) ribs (ESA/CITES I)
- One Babirusa skull (wild boar) (ESA/CITES I)
- Seventeen Helmeted Hornbill earrings (ESA/CITES I)

- Nine Helmeted Hornbill skulls (ESA/CITES I)
- Twelve Rhino Hornbill heads (CITES II)

11. In addition, from 2006 to 2012, USFWS and Customs and Border Protection (CBP) officers intercepted seven incoming packages containing wildlife protected by the ESA and/or CITES, including three Orangutan skulls, that had been sent by BORNEO ARTIFACT to other U.S. purchasers. USFWS records do not reflect the presentation of any CITES permits for these wildlife items. In each instance, BORNEO ARTIFACT declared these wildlife items as "crafts."

## COVERT PURCHASE AND COMMUNICATION

12. On June 22, 2015, the CS agreed to let me use his email address in a covert capacity to communicate with LING and YEO. Between or about June 23, 2015 and July 8, 2015, LING utilized the email address elizagoh@gmail.com and stated the following, among other things:

    a. On or about June 23, 2015, I sent an email to elizagoh@gmail.com and asked about the availability of six items advertised on BORNEOARTIFACT.COM. The wildlife items included: a Babirusa skull a Langur skull and a pair of whale bone statues. I also inquired about the items in BORNEO ARTIFACT's "back room." In past email conversations, LING and the CS used the phrase "back room" to describe the illegal wildlife items that were not publically advertised on the BORNEO ARTIFACT website or eBay.

    b. On or about June 24, 2015, I expressed interest in the wildlife items, but expressed concern about Customs. I asked LING why BORNEO ARTIFACT listed the whale items as "organic bone from the sea" on their website. On or about June 24, 2015, LING responded to my concern about Customs by saying that they would ship one

skull at a time, and possibly ship the Babirusa upper and lower jaws separately. LING said the whale bones were purchased from Indonesian islands and explained, "I'll be in hot soup (or worst gunned down by FBI) and removed by ebay if stated they are whale bones on ebay." On or about June 26, 2015, LING said that splitting the Babirusa's jaws in separate packages would make it "harder to determine its species." YEO sent the wildlife in four packages and shipped the Babirusa tusks separate from the skull.

c. On or about June 30, 2015, LING told me that they would declare the Babirusa skull and primate skull as "craft for decoration." LING wrote that he did not advertise the true composition of the whale and Dugong artifacts and said, "I would rather keep their identities close to a small circle of people that I trust." Regarding the hornbill skulls, LING stated, "Hornbills too are endangered and I do not want to attract attention for."

d. On or about July 2, 2015, LING stated that he and YEO are partners, who both started BORNEO ARTIFACT in 2005. LING said their first customer was an American who purchased a monkey skull necklace. LING said he and YEO shared the same eBay and Gmail accounts in order to monitor daily transactions. LING explained that due to extensive travel times from Kuching, Malaysia, to parts of Indonesia, BORNEO ARTIFACT depended on "runners" who obtained the items so that LING could spend more time managing the BORNEO ARTIFACT eBay account. LING compared the runners to Sméagol of the Lord of the Rings trilogy and said the "runners" run "around endlessly in search for precious."

    e. On or about July 2, 2015, I asked LING about CITES permits. On or about July 3, 2015, LING stated that he would need to go through the Malaysian Forestry Department in order to obtain CITES permits, and he was concerned that this department would make allegations against BORNEO ARTIFACT that could lead to him ending up in "Guantanamo Bay." LING said he could not obtain CITES permits, but promised to declare the items as usual. LING recommended that I get to know someone in Customs.

    f. On or about July 7, 2015, LING told me that BORNEO ARTIFACT had three active runners living in Pontianak, Indonesia (Borneo), and one living on the Indonesian island of Sumatra. LING continued with the Lord of the Rings analogy and said, "There are many runners in this business, each and everyone of them are EAGER to find and please his master. It all comes down to money, which can be a bad thing when they come with TONNES of stuff when u only seek for a few." LING confirmed that he obtained the Rhino Hornbills from a lady in Balikpapan and that the birds were from an Indonesian forest between Samarinda and Banjarmasin (Borneo). LING said the birds were hunted for their meat and all of their parts were used. LING said bribing Malaysian and Indonesian Customs officials was common.

13. On or about July 8, 2015, I purchased, via PayPal, three Orangutan skulls, four Helmeted Hornbill skulls, one Rhino Hornbill head, one Babirusa skull, one primate skull, and one Dugong rib for approximately $4,800.

**SHIPMENT OF PACKAGES AND COVERT COMMUNICATION**

14. Once I purchased the wildlife, YEO communicated directly with me about shipping the wildlife and used the same email address (elizagoh@gmail.com) that LING utilized. Prior to

the purchase, Eoin LING typically signed his emails with a nickname or "Eoin." After the purchase, Galvin YEO typically signed his emails with "Galvin." Between July 9, 2015, and September 1, 2015, YEO made the following statements, among others:

   a. On or about July 9, 2015, YEO sent me an email and informed me that he was going to ship me all of the items. YEO asked me how I wanted the wildlife declared on the Customs form. YEO recommended shipping the Orangutan and Hornbill skulls through the "unregistered postal system" so that "they are not able to return back to me in case of anything." YEO asked me if I had a connection with Custom officers, and said he was not responsible for anything that occurred after the items left Malaysia. YEO told me that if there was a "problem" with the shipment I should not disclose his or LING's identity. In addition, YEO suggested that I could deny that I purchased the wildlife or I could state that the sender of the package had sent it to the wrong address. YEO emphasized that Customs was beyond his control.

   b. On or about July 9, 2015, I told YEO that LING recommended that the wildlife items should be declared as "crafts for decoration." I told YEO that I was comfortable accepting the wildlife without a CITES permit, since LING said BORNEO ARTIFACT could not get one from the Malaysian government. I reminded YEO that after the seizure of a BORNEO ARTIFACT primate skull in 2011 (paragraph 8e) and reported that I never heard anything from Customs because I denied ordering the primate skull.

   c. On or about July 15, 2015, I received DHL package Tracking #7696390483 in Lake Oswego, Oregon. The package had a return address for "Galvin" in Kuching, Malaysia. The package contained one Langur skull, one Dugong rib and four

Babirusa tusks ("SUBJECT PACKAGE 1"). The invoice on the outside of the package listed the package as "crafts for decoration."

d. On or about July 16, 2015, I received DHL package Tracking #8546536375 in Lake Oswego, Oregon. The package had a return address for "Galvin" in Kuching, Malaysia. The package contained one Babirusa skull ("SUBJECT PACKAGE 2"). The invoice on the outside of the package listed the contents as "crafts for decoration."

e. On or about July 15, 2015, YEO told me that he planned on sending the Orangutan and Hornbill skulls soon, but expressed concern that his and LING's identity would be discovered if the skulls were seized. On or about July 15, 2015, I told YEO that I would not reveal his identity if the skulls were seized. On or about July 15, 2015, YEO replied that he was still concerned with shipping the Orangutan and Hornbill skulls. YEO asked me if he could ship the skulls using a different recipient's name so that it did not match the name on the PayPal transaction. On or about July 15, 2015, I provided a name to YEO that was different than the name on the PayPal transaction. On or about July 15, 2015, YEO informed me that he closed the PayPal transaction by providing PayPal with the tracking number for the first package. YEO said, "for the USD4800 paypal payment i will put the 1st DHL tracking number in there, and considered the payment and transaction done..in case, if they inquire about the payment, just say the payment, is a for a craft or artwork that you have and similar value of USD4800, of 1kg or 2.2lbs..so the skulls has nothing to do with this USD4800 amount..I'm taking this very carefully and hope it benefit you and me..have a nice day"

f. On or about July 20, 2015, YEO sent two emails to me. The first email included a photo that contained a partial tracking number of "132965185MY." YEO said, "Please record down the tracking number and delete this email. Don't keep the code number in this email." The second email from YEO included the second half of the tracking number ("CP"). The tracking number (CP132965185MY) revealed that YEO changed his shipping method and sent the third package via EMS (Express Mail Service). EMS is an international mail system that utilizes the postal administration of various countries. On or about July 20, 2015, I asked YEO if he sent the Orangutan and Hornbill skulls in one package. On or about July 20, 2015, YEO said he sent the five Hornbill skulls in one package.

g. On or about, August 3, 2015, USFWS SA Sheila O'Connor received USPS package tracking # CP132965185MY in Lake Oswego, Oregon. The package had a return address for "Peter Tay" in Sarawak, Malaysia. The package contained four Helmeted Hornbill skulls and one Rhino Hornbill head ("SUBJECT PACKAGE 3"). In addition, the invoice on the outside of the package listed the package as "crafts for decoration."

h. On or about August 5, 2015, YEO sent two emails to me. The subject line of the first email was "i have shipped out" and included a partial tracking number of "121703435." In the second email YEO instructed me to add "CP" in front of the tracking number provided in the first email and "MY" to the end of the number. The tracking number (CP121703435MY) revealed that YEO sent the fourth and final package via EMS.

    i. On or about August 7, 2015, YEO told me to avoid tracking the package with my phone or home computer, but said that a public network would be acceptable. YEO also told me to delete the email with the tracking number in case someone approached me and asked me about the incoming shipment. YEO told me to "not admit" anything and discuss it with him first.

    j. On or about August 7, 2015, I asked YEO about the identity of Peter TAY, the person listed on the third package. I also asked YEO why he used EMS to send the SUBJECT PACKAGE 3 even though DHL had a much faster delivery time. On or about August 7, 2015, YEO responded, "Peter is just a name not anyone, I use EMS because EMS I can walk in, as DHL only one office in Kuching and they will know who I am..have a nice day bro!!"

    k. On or about, August 25, 2015, SA Cindi Bockstadter received USPS package tracking # CP121703435MY in Lake Oswego, Oregon. The package had a return address for "Peter Sim" in Kuching, Sarawak Malaysia. The package contained three Orangutan skulls ("SUBJECT PACKAGE 4"). The invoice on the outside of the package listed the package as "crafts for decoration."

    l. On or about August 26, 2015, I sent an email to YEO and asked if Peter SIM was a fictitious name. On or about September 1, 2015, YEO confirmed that Peter SIM was fictitious. YEO also offered me additional wild boar, primate, and hornbill skulls.

15. There were no CITES permits or invoices attached to or included in SUBJECT PACKAGES 1-4. In addition, the USFWS Forensics Laboratory ("the Lab") confirmed that the wildlife received from BORNEO ARTFACT was in fact three Orangutan skulls (ESA, CITES I), four Helmeted Hornbill skulls (ESA, CITES I), one Rhino Hornbill head (CITES II), one

Babirusa skull (ESA, CITES I), and one Dugong rib (ESA, CITES I). The Lab also identified the primate skull as a Langur (CITES II).

**CONFIRMATION OF DEFENDANT'S IDENTITIES**

16. On or about October 5, 2015, LING sent me photos of his Malaysian passport and YEO's Malaysian passport. In addition, LING and YEO sent me US visa applications that contained photos and the same identifying information contained in their passports.

**CONCLUSION**

17. Based on the foregoing facts, I believe there is probable cause to conclude that LING and YEO have conspired to smuggle wildlife into the United States in violation of 18 U.S.C. §§ 371 and 545. I have presented this Affidavit to Assistant United States Attorney Ryan W. Bounds, who agrees there is probable cause supporting issuance of warrants for the arrests of LING and YEO.

Paul Montuori
Special Agent, USFWS

Subscribed and sworn to before me this 1st day of December 2015.

The Honorable Stacie F. Beckerman
United States Magistrate Judge